NOT FOR PUBLICATION                                                                CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HYUNG WOO PARK, | Civil No.: 09-4909 (JLL) |
| Petitioner, | |
| v. | |
| ROY L. HENDRICKS, et al., | OPINION |
| Respondents. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Hyung Woo Park's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"). Petitioner claims that he is being unlawfully held in custody as a result of an erroneous interpretation of the mandatory detention provision contained in § 236(c) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226(c). Respondents have filed a motion to dismiss the Petition. The Court has carefully considered both submissions. Based on the reasons that follow, the instant Petition for a writ of habeas corpus is **granted** and Respondents' motion to dismiss is granted as to all Respondents *except* Roy L. Hendricks.

### BACKGROUND

Petitioner, a citizen of Korea, has been a lawful permanent resident of the United States since July 3, 1980. (Petition, ¶ 2). In 1990, Petitioner was arrested and convicted of two counts of attempted robbery in the first degree in the State of New York. (Id., ¶ 10). Petitioner was sentenced

1

to 18 to 54 months to run concurrently. (Id.). He served approximately one year in jail on such charges and was released in 1991. (Id., ¶ 11). The parties agree that Petitioner was released from custody on these charges prior to the effective date of § 1226(c). (Pet. Br. at 5; Resp. Br. at 4, 9). The parties also agree that the 1990 convictions render Petitioner deportable pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii). (Pl. Br. at 5; Resp. Br. at 7).

In March 1999, Petitioner was arrested for and convicted of driving under the influence and driving with a suspended license in the State of Florida. (Petition, ¶ 12). Petitioner was fined, sentenced to 50 hours of community service, and his license was suspended for six months. (Id.). In December 1999, Petitioner pled guilty to a second offense of driving while intoxicated, this time in the State of New Jersey. (Pet. Br. at 5; Perron Decl., Ex. 2).[1] He was fined, and his license was suspended for 180 days. (Perron Decl., Ex. 2). In July 2002, Petitioner pled guilty, once again, to the offense of driving while intoxicated, also in the State of New Jersey. (Perron Decl., Ex. 2).[2] The parties agree that none of the foregoing crimes (other than the 1990 convictions) render Petitioner deportable. (Pet. Br. at 5; Resp. Br. at 1).

In May 2008, Petitioner filed with the United States Citizenship and Immigration Services ("USCIS") an N-400 application for naturalization. (Petition, ¶ 14). On February 10, 2009, Petitioner's N-400 application was denied by the USCIS because of his criminal record and because he had provided incomplete criminal record information in his application. (Perron Decl., Ex. 6).

---

[1] The Petition erroneously lists the date of such conviction as December 2008, rather than December 1999.

[2] The Court notes that the Petition makes no reference to this conviction. Respondents not only refer to it, but attach a Letter of Disposition from the Borough of Leonia (New Jersey) Municipal Court in support of same. See Perron Decl., Ex. 2.

Petitioner's case was subsequently referred to the office of U.S. Immigration and Customs Enforcement ("ICE"). (Perron Decl., Ex. 7). On September 9, 2009, ICE sent a letter to the Petitioner requesting that he appear for a status interview on September 16, 2009. (Petition, ¶ 14; Perron Decl., Ex. 8). Petitioner appeared for the scheduled interview, at which time ICE issued a Notice to Appear charging Petitioner with removal under § 237(a)(2)(A)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(ii), for having been convicted of two crimes involving moral turpitude. (Perron Decl., Ex. 10). At that point, Petitioner was arrested and detained. (Petition, ¶ 14; Resp. Br. at 7). Petitioner was transferred to and is currently being held at the Essex County Correctional Facility in Newark, New Jersey. (Petition, ¶ 2).

On September 21, 2009, Petitioner appeared before Immigration Judge Margaret Reichenberg to request an individualized bond hearing. (Id., ¶ 15). Immigration Judge Reichenberg denied Petitioner's request, finding that she lacked jurisdiction to conduct an individualized bond hearing pursuant to the recent Board of Immigration Appeals ("BIA") decision, Matter of Saysana, 24 I. & N. Dec. 602, 2008 WL 3978211 (BIA Aug. 27, 2008) (hereinafter "Matter of Saysana"), and ordered that Petitioner is subject to mandatory detention under § 1226(c). (Id.; Resp. Br. at 8).

Petitioner now brings this Petition, asking the Court to: (a) assume jurisdiction over this matter, (b) declare Petitioner's mandatory detention to be unconstitutional, (c) direct Respondents to release him from custody, or, in the alternative, to grant him a bond hearing, (d) preliminarily enjoin Respondents from transferring him to custody in another jurisdiction during the pendency of these proceedings, and (e) award Petitioner costs and attorneys' fees.

## **DISCUSSION**

**A.    Jurisdiction**

This Court's jurisdiction over the instant petition for writ of habeas corpus is premised on 28 U.S.C. § 2241(c)(3). See, e.g., Demore v. Kim, 538 U.S. 510, 517 (2003) (determining that "federal courts have jurisdiction to review a constitutional challenge to § 1226(c)"). Neither side has taken issue with this. Therefore, the Court will exercise its subject matter jurisdiction over the Petition.[3]

**B.    Exhaustion of Remedies**

Petitioner concedes that he has failed to exhaust his administrative remedies inasmuch as he has not appealed Immigration Judge Reichenberg's decision dated September 21, 2009 to the BIA. Nevertheless, Petitioner argues that such requirement – to the extent it exists in this case – is excusable when such exhaustion would be futile or where the agency has predetermined the issue. The Court agrees that, in light of the BIA's decision in Matter of Saysana, any attempt to appeal Immigration Judge Reichenberg's decision to the BIA would be futile at this time. Respondent does not dispute this. Accordingly, the Court will proceed to the merits of the instant Petition.

**C.    Mandatory Detention**

The sole issue before the Court is whether Petitioner is subject to mandatory detention pursuant to INA § 236(c), 8 U.S.C. § 1226(c) (and, therefore, not entitled to a bond hearing). In making this determination, the Court must interpret the phrase "when the alien is released" to determine whether it refers to release from custody for ***any offense*** after the effective date of §

---

[3] See generally Velasquez v. Reno, 37 F. Supp. 2d 663, 669 (D.N.J.1999) (finding that "8 U.S.C. § 1226(e) has not stripped this court of jurisdiction to review petitioner's claims under 28 U.S.C. § 2241.").

1226(c), or whether it refers to release from custody for the ***removable offense*** after the effective date of § 1226( c). See, e.g., Garcia v. Shanahan, 615 F.Supp. 2d 175, 180 (S.D.N.Y. 2009) ("The question is: 'released' from custody for *what*."). In interpreting the same phrase, the BIA held that the "when the alien is released" phrase should not be read as referring to release from custody for the removal offense. Matter of Saysana, 2008 WL 3978211, at *608 (finding that "the language of section 236(c)(1) of the Act does not support limiting the non-DHS custodial setting solely to criminal custody tied to the basis for detention under that section.").

To date, no Court of Appeals has ruled on this narrow issue.[4] Absent a clear directive from a Court of Appeals, based on the reasons that follow, this Court respectfully disagrees with the BIA's interpretation of the "when the alien is released" phrase. Instead, this Court concludes that, based upon the unambiguous language of the statute, Congress intended that there would be a nexus between the removable offense and the "released" provision. As a result, like virtually every district court that has considered this question in a similar context, the Court finds that Petitioner is not subject to mandatory detention under § 1226(c) because he was released from prison for the removable offense well before the effective date of the mandatory detention statute.[5]

---

[4] According to Respondents, three of the district court cases which engaged in a Chevron analysis of Matter of Saysana are currently on appeal before the Court of Appeals for the First and Second Circuits. See Resp. Br. at 12-13. These cases include: (1) Saysana v. Gillen, No. 08-11749, 2008 WL 5484553, at *1 (D. Mass. Dec. 1, 2008); (2) Hy v. Gillen, 588 F. Supp. 2d 122, 127 (D. Mass. 2008); and (3) Garcia v. Shanahan, 615 F. Supp. 2d 175, 182 (S.D.N.Y. 2009).

[5] See, e.g., Ortiz v. Napolitano, No. 09-045, 2009 WL 3353029, at *3 (D. Ariz. Oct. 19, 2009) ("Consistent with every district court that has considered this issue, the Court concludes that the mandatory detention provision, 8 U.S.C. § 1226(c), does not apply to Petitioner because he was released from custody for the removable offense well before the effective date of the mandatory detention provision."); Mitchell v. Orsino, No. 09-7029, 2009 WL 2474709, at *3 (S.D.N.Y. Aug. 13, 2009) ("Petitioner's release from custody after the effective date of § 1226(c) for a nonremovable offense does not make him subject to mandatory detention under the statute."); Garcia v. Shanahan,

1.	**Section 1226(c)**

By way of background, the Immigration and Nationality Act of 1952 afforded the Attorney General discretion to release an alien on bond pending a final determination of deportability. See 8 U.S.C. § 1252(a) (1970); see generally Velasquez v. Reno, 37 F. Supp. 2d 663, 666 (D.N.J.1999). The INA was amended in 1988 through the passage of the Anti-Drug Abuse Act which contained a mandatory detention provision for aliens deemed removable for having committed certain enumerated crimes. See 8 U.S.C. § 1252(a)(2) (1990); see generally Velasquez, 37 F. Supp. 2d at 666. The INA was amended again in 1990 to include a provision allowing for bond for certain lawfully admitted aliens. See 8 U.S.C. § 1252(a)(2)(B) (1992); see generally Velasquez, 37 F. Supp. 2d at 666. In April 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA") which "deleted the aforementioned exception for legal aliens and again prohibited release pending a determination of deportation for aliens removable for having committed certain enumerated crimes." Velasquez, 37 F. Supp. 2d at 666 (citing AEDPA § 440(c); 8 U.S.C. § 1252(a)(2)).

On September 30, 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). The IIRIRA contained a mandatory detention provision, which

---

615 F. Supp. 2d 175, 182 (S.D.N.Y. 2009) ("Like every district court that has considered the question at bar, this Court now concludes that the petitioner is not subject to mandatory detention under Section 1226(c), because he was released from prison for the removable offense well prior to the effective date of the mandatory detention rule."); Hy v. Gillen, 588 F. Supp. 2d 122, 127 (D. Mass. 2008) ("Because the 2007 'release' from state custody is not related to the 1991 offense rendering Petitioner removable, Petitioner is not subject to mandatory detention."); Thomas v. Hogan, No. 08-417, 2008 WL 4793739, at *3 (M.D. Pa. Oct. 31, 2008) (finding that respondents' position "completely ignores the developing body of case law which finds that the date of release from the offense for which the individual is found removable determines whether the individual is entitled to an individualized bond hearing or subject to the mandatory detention provision."); Saysana v. Gillen, 2008 WL 5484553, at *1 (D. Mass. Dec. 1, 2008) (same).

replaced AEDPA § 440, and provided that aliens who commit certain enumerated offenses would be detained without bond pending their removal proceedings. See INA § 236(c), codified at 8 U.S.C. § 1226(c). Implementation of the foregoing mandatory detention provision was deferred for two years, during which time temporary Transition Period Custody Rules ("TPCR") were put in place. See IIRIRA §303(b)(3); see generally Velasquez, 37 F. Supp. 2d at 667. The TPCR provided for bond hearings for some aliens deemed removable for having committed certain crimes, and gave the immigration court the discretion to set bond under certain circumstances. See IIRIRA §303(b)(3)); see generally Velasquez, 37 F. Supp. 2d at 667. On October 9, 1998, the TPCR expired and INA § 236(c), codified at 8 U.S.C. § 1226(c), became effective, providing for the mandatory detention of certain criminal aliens.[6] Id.

INA § 236(c), codified at 8 U.S.C. § 1226(c), provides, in relevant part, as follows:

> The Attorney General shall take into custody any alien who —
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(I) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

---

[6] "Aliens who are removable because they have committed certain criminal offenses enumerated in the INA have been referred to in the statute and throughout the case law as 'criminal aliens.'" Velasquez, 37 F. Supp. 2d. at 667 n. 4.

> *when the alien is released*,[7] without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c) (emphasis added).

### 2. Petitioner's 1990 Armed Robbery Convictions

It is undisputed that Petitioner's two convictions of armed robbery from 1990 constitute crimes of moral turpitude, thereby rendering him deportable under §1227(a)(2)(A)(ii).[8] However, IIRIRA, and the mandatory detention provision contained therein, did not take effect until October 1998. The parties agree that the statute, by its own terms, applies only prospectively, that is, to noncitizens "released" from custody on or after the effective date of the statute. See, e.g., IIRIRA § 303(b)(2)[9] (providing that after the initial two-year deferment, the provisions of § 1226(c) "shall apply to individuals released *after* such periods") (emphasis added).[10] Nevertheless, Respondent

---

[7] The BIA has also interpreted the "when the alien is released" phrase as requiring that the release be from a non-DHS custodial setting. See Matter of Saysana, 2008 WL 3978211, at *605. The Court notes that the parties do not take issue with this aspect of the BIA's interpretation of this phrase.

[8] 8 U.S.C. § 1227(a)(2)(A)(ii) provides that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." The parties agree that each of Petitioner's 1990 armed robbery convictions constitutes a crime involving moral turpitude.

[9] Section 303(b) of the IIRIRA is not codified but can be found in the historical notes to 8 U.S.C. § 1226. See generally Velasquez, 37 F. Supp. 2d at 667 n. 3.

[10] See generally Velasquez, 37 F. Supp. 2d at 671 ("IIRIRA § 303(b)(2) clearly sets forth the express command of Congress that the permanent mandatory detention provisions are to be applied to aliens who were released after the transitional rules expired. The transitional rules expired on October 9, 1998, and, therefore, by virtue of the express terms of the IIRIRA, 8 U.S.C. § 1226(c) does not apply to petitioner who was released before – and well before – October 9, 1998.") (internal citations omitted).

argues that Petitioner is subject to mandatory detention under § 1226(c) because: (a) the "released" provision contained in the statute is ambiguous, and (b) the BIA's interpretation of the "released" provision in Matter of Saysana is reasonable because it gives effect to Congress' intent to detain certain criminal aliens facing removal proceedings. (Resp. Br. at 13). In particular, Respondents urge the Court to defer to the BIA's recent interpretation of § 1226(c) under the formulation set forth by the Supreme Court in Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837 (1984).

### 3. Chevron Analysis

In Chevron, the Supreme Court established a two-step framework for reviewing an administrative agency's interpretation of a statute. Id. at 842-43. Under step one, the Court must consider "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. "At this first step the court should 'try to determine congressional intent using traditional tools of statutory construction,' and looking at 'the language and the structure of the Act as a whole.' " Garcia, 615 F. Supp. 2d at 182 (quotations omitted). If, however, "the statute is silent or ambiguous with respect to the specific issue," then the Court must proceed to step two and determine whether the agency's determination is reasonable, that is, whether it is "based on a permissible construction of the statute." Chevron, 467 U.S. at 843.

This Court finds that the plain language of the statute is unambiguous. See, e.g., Mitchell, 2009 WL 2474709, at *3 ("It is clear from the language of § 1226 (c) that 'when the alien is released' refers to release from custody for one of the enumerated removable crimes."); Garcia, 615 F. Supp. 2d at 182 (finding that the "plain language of the statute is unambiguous"); Hy v. Gillen, 588 F. Supp. 2d 122, 127 (D. Ma. 2008) (same). In particular, this Court agrees with the

observations made by the Court in Hy, in noting that: (1) the "when released" language immediately follows a list of qualifying offenses, and (2) the "when released" clause is further modified by language providing that detention is required regardless of whether or not the alien is later arrested "for the same offense." See Hy, 588 F Supp. 2d at 127; 8 U.S.C. § 1226(c). When considered together, "it is only natural to read the 'when the alien is released' clause to mean 'when the alien is released from custody arising from the qualifying offense.' " See Hy, 588 F. Supp. 2d at 127; see also Garcia, 615 F. Supp. 2d at 183-84 ("A reading interpreting that 'when the alien is released' to apply to **any** offense renders a later reference to the '**same offense**' meaningless.") (emphasis added).

It is, therefore, clear from the face of the statute that Congress intended that there would be a nexus between the two qualifying factors under § 1226(c): (1) the underlying offense, and (2) release from custody. See, e.g., Ortiz, 2009 WL 3353029, at *3 (finding that § 1226(c) "clearly requires a nexus between the deportable offense and the release from custody."); Garcia, 615 F. Supp. 2d at 182 (noting that the language of § 1226(c) "manifests Congress' clear intent that there must be a nexus between the date of release and the removable offense."); Hy, 588 F. Supp. 2d at 127 ("Viewing the 'when released' language in light of the section as a whole, it is clear that the 'release' triggering mandatory detention must be related to the underlying qualifying offense.").

Here, Petitioner was convicted of the removable offenses in 1990. He completed his sentence in 1991. In 1998, the mandatory detention statute went into effect. From 1999 through 2002, Petitioner was arrested on several unrelated and nonremovable charges. He pled guilty to such charges and was ultimately released from custody for same. Petitioner was detained pursuant to § 1226(c) based upon: (1) his status as a qualifying criminal alien resulting from his 1990 convictions,

10

and (2) the fact that he was released from custody after the effective date of the statute, albeit on completely unrelated and nonremovable charges. There is **no** nexus between these two qualifying factors. Accordingly, the Court declines to give deference to the BIA's statutory reading as set forth in Matter of Saysana, and, instead, finds that Petitioner's release from custody after the effective date of § 1226 (c) for a nonremovable offense does not render him subject to mandatory detention under the plain language of the statute. Because the Court finds that the language of the statute is unambiguous and Congress' intent clear, the Court need not proceed to the second step of the Chevron analysis.[11]  See, e.g., Chevron, 467 U.S. at 842-43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

In light of the foregoing, this Court concludes that 8 U.S.C. § 1226(c) does not apply to Petitioner because he was released from prison for the removable offense well before the effective date of the mandatory detention statute.

### 4. Additional Claims and Respondents' Motion to Dismiss

The Court notes that Petitioner has also raised certain due process concerns and claims

---

[11] Even if the Court should construe the language as ambiguous, and therefore proceed to step two of the Chevron analysis, the Court would find the BIA's interpretation of same unreasonable. As the Court in Hy aptly points out:

> Under the Government's reading, an alien who committed a qualifying offense years before the statute took effect could be subject to mandatory detention decades later if he is taken into state custody for even the most trivial offense, whether he is convicted or not. Even an illegal arrest would be enough to trigger mandatory detention if any release from custody were enough.

Hy, 588 F. Supp. 2d. at 127.

regarding the constitutionality of the mandatory detention statute. Having found the mandatory detention statute to be inapplicable to Petitioner, the Court need not reach the question of whether the mandatory detention provisions are unconstitutional.[12]  See, e.g., Velasquez, 37 F. Supp. 2d at 673 (declining to reach same issue after finding mandatory detention statute inapplicable to petitioner).

Petitioner has also requested attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). In support of this request, Petitioner makes the cursory statement that he is entitled to such fees "because the Government's position was not substantially justified." (Pet. Br. at 10). Petitioner's request in this regard is denied. The fact that this Court has disagreed with the BIA's interpretation of the relevant statute does not render Respondents' position in this matter substantially unjustified. This is particularly so given that no Court of Appeals has yet spoken on this issue.

Finally, the Court notes that Respondents have filed a motion to dismiss the instant Petition in its entirety. In light of the Court's decision, much, if not all, of Respondents' motion is now moot and is hereby denied as such. What is not moot, however, is Respondents' request that the Court dismiss the Petition as to all Respondents *except* Roy L. Hendricks – the warden of the Essex County Correctional Facility and Petitioner's immediate custodian. In support of this position, Respondents cite to Rumsfeld v. Padilla, 542 U.S. 426, 434-435 (2004), for the proposition that the only proper respondent to a petition for a writ of habeas corpus is the warden of the facility where the prisoner

---

[12] Although it is not entirely clear to the Court, to the extent the Petition should be construed as seeking a declaration that the mandatory detention provisions also violate the Administrative Procedures Act, the Court likewise declines to reach this issue, having found the mandatory detention provisions inapplicable to Petitioner.

is being held.  See id. at 434-435 ("The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner]' " and noting that "that there is generally only one proper respondent to a given prisoner's habeas petition."). Petitioner has chosen *not* to oppose this request. Accordingly, the instant petition for writ of habeas corpus is dismissed as to all Respondents *except* the warden of the Essex County Correctional Facility, Roy L. Hendricks. See, e.g., id. ("In habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.").

## CONCLUSION

Based on the reasons set forth above, the Court grants the instant Petition for a writ of habeas corpus.  An Immigration Judge shall provide Petitioner with an individualized bond hearing within ten (10) days from the date of entry of this Court's November 12, 2009 Order to determine whether, and under what conditions, Petitioner may be released from custody pending the conclusion of the removal proceedings against him.   In the meantime, Respondents are restrained from removing Petitioner from this Court's jurisdiction during the pendency of his bond proceedings, including the hearing and any appeal taken therefrom.  An appropriate Order accompanies this Opinion.


DATED: Nov. 12, 2009                                          /s/ Jose L. Linares
                                                              United States District Judge

13